53 CCPA

**Application of Herbert C. SNYDER.**
**Patent Appeal No. 7459.**

United States Court of Customs
and Patent Appeals.
Dec. 16, 1965.

Christel & Bean, Buffalo, N. Y. (Conrad Christel, Buffalo, N. Y., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Irving R. Pellman, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Herbert C. Snyder appeals from the decision of the Board of Appeals affirming the rejection of claims 25 to 28 of his application [1] relating to a method of cleaning iron molds used in forming glassware. No claims have been allowed.

The molding surfaces of iron molds, when used, become coated with a tenacious film of residue material such as heat scale, silicon resin, graphite and oxides which adhere to the mold surfaces. These deposits build up to a point where they have a deleterious effect on the molding process and must be removed, preferably without abrasive wear and other damage to the mold cavity.

The method of the claimed invention is succinctly stated in appellant's brief as follows:

\* \* \* subjecting the molds to electrolytic action by immersing them as cathodes in a tank contain-

1. Serial No. 836,483, filed August 27, 1959, for "Mold Cleaning Method."

ing a liquid solution of sodium hydroxide and sodium gluconate while continuously maintaining the effectiveness of the electrolyte by continuously circulating the liquid electrolyte from the first container to a second container wherein iron is electrolytically deposited from the solution and the solution is continuously circulated back to the cleaning tank. The claims specify that this electro-deposition maintains the iron content in the mold cleaning tank below a critical minimum of 0.1 grams of iron per liter of liquid.

Claim 25 is representative and reads as follows:

> In a method of cleaning iron molds such as are used in molding glass articles, the step which comprises immersing a mold in a tank containing an electrolyte consisting essentially of an aqueous solution of sodium hydroxide and sodium gluconate in approximate proportions by weight as follows: water 8 parts, sodium hydroxide 2 parts, sodium gluconate 1 part, passing an electric current through the solution between the mold and a spaced electrode, periodically reversing the direction of the current during the period of immersion, and continuously passing solution from the tank to an electrolytic cell and back to the tank in a continuous closed liquid circuit to electrolytically deposit from the solution to a cathode in said cell iron which enters the solution from the mold to maintain the iron content of said solution in said closed liquid circuit below 0.1 grams per liter.

The references relied upon below are:

Bodamer et al. 2,810,686 October 22, 1957
Meyer 2,915,444 December 1, 1959

Meyer discloses a method of cleaning ferrous metals including molds such as those used in molding rubber or plastic articles. The article to be cleaned is immersed in a tank containing an aqueous electrolyte comprising 20% sodium hydroxide and 10% sodium gluconate by weight. An electric current is passed through the solution between the article and a carbon electrode with the direction of the current being periodically reversed during immersion. Occasionally, the solution may be analyzed with such components being replaced as is necessary to retain the same original relative proportions. The process may be speeded up by precleaning to remove the oil or grease.

Bodamer et al. disclose a process of rejuvenating sulfuric acid used in cleaning iron. In the process, the spent pickling liquor, in exactly the condition it had after it was employed in pickling iron and without any pretreatment,

> * * * is flowed slowly and continuously downward through the cathode compartment where it is partially electrolyzed. The partially electrolyzed catholyte is then continuously removed from the bottom of the cathode compartment and is next run slowly through the anode compartment in either direction, but preferably upward.

The solution which is continuously removed is then available for use as new pickling liquor. The spent liquor is electrolyzed until the content of ferrous sulfate is sufficiently reduced—preferably to a concentration of 1% to 5%. The iron is deposited at the cathode.

The examiner rejected the appealed claims as unpatentable over Meyer in view of Bodamer et al. The examiner noted that the electrolytic cleaning step is clearly taught by Meyer and "applicant apparently concedes this point." He found, however, that claim 25 distinguished over Meyer in that the used electrolyte passes into an electrolytic regeneration zone wherein the descaled iron coming from the cleaning zone is plated out on a cathode and thus regenerated the electrolyte passes back to the cleaning zone for further use with the iron content of the solution being kept below 0.1 g./1. He found that Bodamer et al. disclose the "well-known concept of electrolytically regenerating a cleaning solution used on iron objects," and that the regeneration, as in claim 25, was accom-

plished by the plating out of iron at a cathode and that Meyer taught the maintenance of his solution by separating out the iron. He saw "no invention" in applying the teaching of Bodamer et al. in regenerating Meyer's cleaning solution electrolytically, noting that while appellant's solution is alkaline and Bodamer et al.'s acidic, "no reason exists to suggest that an alkaline cleaning solution can not be electrolytically regenerated."

The board adopted the examiner's position as set forth in his answer, holding that:

> * * * it would be obvious to one having knowledge and skill in this art to employ during the course of the process as the means for plating-out dissolved iron and maintaining the electrolyte at a desired iron level as suggested in Meyer, * * * the expedient employed in Bodamer et al. in an entirely analogous environment. The relationship between the Meyer process and pickling is clearly set forth * * * and we therefore consider use of the Bodamer et al. expedient in the Meyer electrolytic cleaning operation to be quite apparent.

There is no dispute that Meyer discloses the electrolytic cleaning step. Appellant contends, however, that Meyer does not suggest the importance of maintaining a low maximum iron content in the cleaning electrolyte. We disagree. The patent states that "such of the iron as is taken into the solution is readily disposed of. The dissolved iron may be plated out either automatically * * * during the course of and as an incident accompanying the deoxidizing * * *" or by extended periods of deoxidizing. We believe the Meyer reference affords a clear suggestion to one of ordinary skill in this art to rejuvenate the chelating agent by electrolytic removal of the iron. The iron concentration recited in the claims appears to be no more than that which would be determined by one of ordinary skill in the art in achieving the optimum operation of the process.

Appellant further contends that the Meyer reference does not suggest diverting the electrolyte from the cleaning tank to a second electrolytic cell wherein iron is continuously plated from the electrolyte, and continuously returning the electrolyte to the cleaning tank.

We agree with appellant that Meyer does not clearly suggest a continuous rejuvenating procedure. However, we believe that Meyer *taken with Bodamer et al.* does provide the requisite suggestion for diverting the electrolyte to a separate tank for rejuvenation.

The Bodamer et al. reference states that:

> This invention relates to spent pickle liquor which is obtained from the pickling or cleaning of iron and steel products and which contains sulfuric acid and dissolved iron salts. It relates to an electrolytic process of recovering metallic iron from such spent liquor and of regenerating sulfuric acid which can be used in subsequent pickling operations.

In another portion of the reference it is stated that the "regenerated sulfuric acid is suitable for use in subsequent pickling operations." It further reads that the "process of this invention can be carried out batchwise or continuously."

We can find no basis in the Bodamer et al. reference for appellant's contention that the spent pickle liquor is not being drawn from an *operating* pickling tank. Nor can we find any support for appellant's argument that pickling is essentially and normally a batch operation and there is no indication in Bodamer et al. that anything else is contemplated. Whether pickling is *normally* a batch process is irrelevant in view of the fact that the reference clearly states that the process may be batch or continuous.

One further matter requires our attention. An affidavit was filed by one James P. Poole which purports to show that the continuous rejuvenation process as called for by the claims was su-

perior to periodic rejuvenation of the electrolyte. Even if we give full credit to the averments in the affidavit that a continuous process is better than a periodic process, the fact remains that in our view the Bodamer et al. and Meyer references, especially the former, suggest a continuous process.

Having considered the differences between the prior art and the subject matter sought to be patented, we conclude that the subject matter as a whole is nonobvious under 35 U.S.C. § 103. Accordingly, the decision of the board is affirmed.

Affirmed.

SMITH, Judge (concurring).

I concur in the result in this case. The appealed claims stand rejected under 35 U.S.C. § 103 on Meyer in view of Bodamer. Appellant, with commendable candor, states in his brief:

> The Meyer patent admittedly constitutes the starting point from which the present invention resulted. This patent shows the identical alkaline cleaning materials, sodium gluconate and sodium hydroxide, in the same proportions as employed by the present applicant, and used as electrolyte in electrolytic cleaning of ferrous metals.

Appellant also agrees that Meyer does disclose *plating* the iron resulting from deoxidizing out of the cleaning solution.

Appellant argues that two differences between his claims and the prior art would not be obvious to one of ordinary skill in subject matter sought to be patented: first, the claimed process calls for *continuously* plating out the iron in the cleaning solution in a *separate* tank; and second, the claimed process also calls for maintaining the iron in the solution below 0.1 grams per liter of solution.

In reviewing the references of record, I find that Meyer does disclose plating out the iron in solution during the course of removing the ferrous oxides from the molds. He rejuvenates the solution continuously during the process of deoxidizing the molds through plating and also precipitation when cyanide is used in the solution to form iron cyanide complexes. Meyer also discloses maintaining the solution by plating, precipitation and replacing the active agents in the solution as they are used to conform to the proportions claimed, which appellant admittedly also claims. Considering Bodamer, I find it discloses a process for rejuvenating a cleaning solution on a continuous basis. I agree with appellant's argument that there is no teaching or suggestion in Bodamer that the cleaning solution is drawn from an *operating* pickling tank. Nor do I find it necessary to dispute appellant's argument that pickling is essentially and normally a batch operation. Bodamer as a whole teaches a continuous rejuvenating process for a cleaning solution wherein iron is plated out and the solution is suitable for further utilization in a cleaning process.

Viewing the prior art teachings as I do, I find that the alleged limitations in the appealed claims present at best extremely subtle differences over the prior art. Meyer fully describes the cleaning step of appellant's process. Meyer further discloses continuously plating out the iron in the cleaning solution during the deoxidizing or cleaning of the molds. Meyer fails to disclose precisely where in the physical configuration embodying his process he plates out the unwanted iron oxides, i. e., whether rejuvenating of the cleaning solution occurs in the cleaning tank or a separate tank. Meyer maintains his solution by adding chemicals to preserve the original ratio set forth for a clean solution and plating out the iron, irrespective of any limitation as to the amount of iron in the solution. Bodamer fully describes the rejuvenating aspect of appellant's process.

I therefore find no error in the board's decision that the alleged differences between appellant's process and the prior art would be obvious to one of ordinary skill in this art.