Herbert McLAUGHLIN, Plaintiff,

v.

TWA GETAWAY VACATIONS, INC., Defendant.

No. 96 Civ. 8054(JSR).

United States District Court, S.D. New York.

May 28, 1997.

---

Lester L. Levy, WolfPopper LLP, New York City, for plaintiff.

Rodney E. Gould and Robert C. Mueller, Rubin, Hay & Gould, P.C., Framingham, MA, for defendant TWA Getaway Vacations, Inc.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiff sues for breach of contract and for violations of N.Y. Gen. Bus Law §§ 349, 350, and 350–a (prohibiting false and deceptive advertising) in connection with his purchase of a "vacation package" to Las Vegas, Nevada from defendant TWA Getaway Vacations, Inc., a wholly-owned subsidiary of Trans World Airlines, Inc. ("TWA"). Specifically, plaintiff alleges that the package, including both air transportation and hotel accommodations, was falsely advertised as a "3 days / 2 nights" vacation, whereas in actuality it scheduled defendant's arrival in Las Vegas on a Friday night and his departure the following Sunday. Plaintiff alleges further injury from having to pay an additional $37.00 to rebook his flight so as to arrive in Las Vegas on Friday morning and thereby realize the full "3 days" for which he believed he had bargained.

■ Defendant has moved to dismiss or for summary judgment on the ground that plaintiff's claims of false and deceptive advertising are preempted by the Federal Aviation Act of 1958, as amended by the Airline Deregulation Act of 1978 ("ADA"). *See* 49 U.S.C. § 41713(b)(1).[1] The motion was fully briefed and was argued to the Court on March 28, 1997. Having reviewed all submissions, the Court hereby grants defendant's motion, for the following reasons.

The Supreme Court has broadly interpreted the provisions of the ADA to preempt all actions that are (a) asserted against "air carriers" and (b) have "a connection with or reference to airline 'rates, routes, or services.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992). *See also American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) (preempting class action claims that frequent flier program violated Illinois Consumer Fraud and Deceptive Business Practice Act). As to

---

1. The statute states:

   Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

   49 U.S.C. § 41713(b)(1).

the first requirement, an "air carrier" is defined as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). Here, defendant, as a wholly-owned subsidiary of TWA, provided air transportation by booking blocks of low-priced seats on certain TWA flights for sale to the public as part of reduced-rate vacation packages substantially premised on the air transportation component. In so doing, defendant acted as an indirect "air carrier." *See Arkin v. Trans Int'l Airlines, Inc.*, 568 F.Supp. 11, 13 (E.D.N.Y.1982) (noting that "providers of travel arrangements and flight transportation" are indirect "air carriers" under the ADA).

As to the second requirement, the Supreme Court has previously concluded that the activity here challenged "relates to" the rates and services of an airline. Specifically, in *Morales*, the Supreme Court held that state laws regarding advertisement with respect to disclosure of "limitations on refund or exchange rights, time-of-day or day-of-week restrictions, length-of-stay requirements, ... limitations on breaks or changes in itinerary, [and] limits on fare availability" were preempted as relating to the rates and services of an airline. *Morales*, 504 U.S. at 387–88, 112 S.Ct. at 2038–39. While the Court excluded from such preemption those cases in which the impact of a challenged advertising practice on fares or rates was tenuous or remote, *see id.* at 390, 112 S.Ct. at 2040, this is hardly the case here, where the restrictions that were placed (fraudulently or otherwise) on the times of flights available for low-cost vacation packages directly and materially impacted air fares, which are premised on filling off-peak flights in this manner. Accordingly, plaintiff's claims of false and deceptive advertising under the

various New York consumer protection laws are preempted by the ADA and cannot support his action here.

██ Although plaintiff's remaining claim, for breach of contract, is not preempted by the ADA, *see Wolens*, 513 U.S. at 228, 115 S.Ct. at 824 (permitting contract recovery "for the airline's alleged breach of its own, self-imposed undertakings"), this Court is nevertheless without power to adjudicate such a claim, for the Court has no original subject matter jurisdiction over the remaining claim and declines to exercise supplemental jurisdiction, *see Morse v. University of Vermont*, 973 F.2d 122, 128 (2d Cir.1992) ("[I]t may be an abuse of discretion for a district court to refuse to dismiss a pendent state claim after it dismisses a federal claim....."). Specifically, while there appears to be diversity of citizenship for jurisdiction under 28 U.S.C. § 1332(a), damages resulting from plaintiff's contract claim could not in good faith be alleged to exceed the $50,000 amount "in controversy" previously required for jurisdiction under the statute.[2] *See, e.g., Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781 (2d Cir.1994). While it would appear that the appropriate measure of damages to make plaintiff whole for any alleged contractual breach would be $37.00 (the amount paid to rebook a flight for a stay of "3 days," Compl. ¶ 21), plaintiff defines his remedy on this claim as "the full value of the vacation package." Compl. ¶ 29. But since the value was only, at most, a few hundred dollars, Compl. Exh. A (defendant's advertisement), such an amount still does not remotely approach the requisite $50,000.[3]

Accordingly, the Court grants defendant's motion to dismiss and for summary judg-

---

2. Although the 1996 Amendment to § 1332 raised the amount in controversy for diversity jurisdiction from $50,000 to $75,000, that amendment did not take effect until 90 days after its date of enactment on October 19, 1996. Pub.L. No. 104–317, § 205(b) (1996). As this action was commenced in state court on September 27, 1996, and removed to federal court pursuant to 28 U.S.C. §§ 1441, 1446 on October 25, 1996, the amount in controversy need only meet the $50,000 requirement.

3. That plaintiff purports to have brought his breach of contract claims on behalf of a class does not alter this conclusion, since the minimum amount in controversy for subject matter jurisdiction over a class action must in these circumstances be individually met by each member of the purported class. *See Snyder v. Harris*, 394 U.S. 332, 335–36, 89 S.Ct. 1053, 1056–57, 22 L.Ed.2d 319 (1969); *Gilman v. BHC Securities, Inc.*, 104 F.3d 1418, 1422 (2d Cir.1997).

ment, and hereby dismisses the action. Clerk to enter judgment.

SO ORDERED.