**Lise Garland DE JESUS, et al., Plaintiffs,**

v.

**AMERICAN AIRLINES, INC., Defendant.**

**American Airlines, Inc., Third–Party–Plaintiff,**

v.

**Alejandro Garcia Padilla, et al., Third–Party–Defendants.**

**Civil No. 06–2033(DRD).**

United States District Court, D. Puerto Rico.

Dec. 21, 2007.

Lise Garland–De–Jesus, San Juan, PR, pro se.

Mirna De–Jesus, San Juan, PR, pro se.

Diego A. Ramos, Jose L. Ramirez–Coll, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant and Third–Party–Plaintiff.

Francisco A. Ojeda–Diez, P.R. Department of Justice, San Juan, PR, for Third–Party–Defendants.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

This case constitutes a consumer complaint filed against American Airlines, Inc. (American) before the Puerto Rico Department of Consumer Affairs (Departamento de Asuntos del Consumidor) for alleged deceptive advertising. On February 6, 2007 American filed a Third Party Complaint against the Department of Consumer Affairs and Alejandro Garca Padilla (collectively DACO, for the Department's acronym in Spanish), alleging that the Airline Deregulation Act (ADA) preempts DACO from enforcing its deceptive advertisement laws and regulations against American and other airlines operating in interstate commerce. Docket No. 12. American premised its request for a declaratory judgment and injunctive relief on Section 1983 of the Civil Rights Act, 42 U.S.C. § 1983[1], and the Supremacy and Commerce Clauses of the United States Constitution.

On June 18, 2007 American filed a Motion for Judgment on the Pleadings, arguing that the instant controversy can be

---

1. For the purposes of an action under § 1983 claim, Puerto Rico is a "functional equivalent of a state". *Pagan v. Calderon*, 448 F.3d 16, 31 FN 6. (1st Cir.2006).

resolved without holding an evidentiary hearing as the matter constitutes purely an issue of law. Docket # 29. On July 3, 2007, DACO opposed American's motion and, although it recognized the preemptive effect of the relevant section of the ADA as to rates, 49 U.S.C. § 41713(b)(1), argued a distinction averring that DACO was not preempted from regulating the way airlines advertise in Puerto Rico. Docket # 35. In particular, DACO averred it is not preempted by federal law from reviewing and regulating the language or wording used by airlines in their ads. Docket No. 35 and 28.

At the hearing held before the Court on August 2, 2007, the parties agreed that the instant controversy is purely an issue of law and ripe for disposition. After reviewing the parties' briefings on the subject, this Court is of the opinion that the ADA completely preempts DACO from enforcing its deceptive advertisement laws and regulations against American, including particularly the regulation of the language or wording used in advertisements. For the reasons discussed below, the Court GRANTS American's motion.

## I. STANDARD FOR JUDGMENT ON THE PLEADINGS

The Federal Rules of Civil Procedure allow a party to move for judgment on the pleadings. See Fed.R.Civ.P. 12(c). When considering a motion under Rule 12(c), as in the case of a motion to dismiss pursuant to Rule 12(b)(6), courts "must accept all the non-movant's well-pleaded factual avertment as true and draw all reasonable inferences in [his or her] favor." See *Santiago de Castro v. Morales Medina*, 943

F.2d 129, 130 (1st Cir., 1991)(*citing Rivera–Gomez v. de Castro* 843 F.2d 631, 635 (1st Cir., 1988)). Although the First Circuit Court of Appeals recognized that "nothing in the text of Rule 12(c) compels [a] court to apply any particular standard when deciding whether to grant or deny a motion for judgment on the pleadings," *NEPSK, Inc. v. Town of Houlton,* 283 F.3d 1, 8 (1st Cir., 2002), on several previous occasions that Court has consistently reiterated the long-standing standard that **judgment on the pleadings, under Rule 12(c), "may not be entered unless it appears beyond a doubt that the nonmoving party can prove no sets of facts in support of her claim which would entitle her to relief."** *Feliciano v. Rhode Island,* 160 F.3d 780, 788 (1st Cir., 1998) (*emphasis ours* ). *Gaskell v. Harvard Cooperative Society,* 3 F.3d 495, 497–98 (1st Cir.1993); *International Paper Co. v. Jay,* 928 F.2d 480, 482 (1st Cir.1991). Thus, under Rule 12(c), courts need not credit conclusory statements or merely subjective characterizations, but rather plaintiffs must set forth in their complaint specific, non conclusory factual allegations regarding each material element necessary to sustain recovery. *Coyne v. City of Somerville,* 972 F.2d 440, 444 (1st Cir.1992); *Dartmouth Review v. Dartmouth Coll.,* 889 F.2d 13, 16 (1st Cir.1989).[2]

## II. DISCUSSION

A. *Basis for declaratory and injunctive relief*

It is well-settled that, when a state official acts in violation of federal law, prospective injunctive relief is necessary and appropriate to enjoin further violation.

---

**2.** Recently the Court of appeals of the First Circuit reiterated the long standing standard under Rule 12(b)(6) which is applicable under Rule 12(c): "To survive a motion to dismiss, a complaint must establish 'a plausible entitle-

ment to relief.' " *See Alvarado Aguilera v. Negron,* 509 F.3d 50 (1st Cir.2007)(*citing Bell Atlantic Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).

See, *Ex parte Young,* 209 U.S. 123, 154, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Mills v. State of Maine,* 118 F.3d 37, 54 (1st Cir.1997). A state official's attempted enforcement of a federally preempted statute constitutes an action in violation of federal law. See, *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (applying the *Young* doctrine and holding that state officials' enforcement of state laws and regulations that had been expressly preempted by Congress amounted to a violation of federal law).

Against this backdrop, there is "no doubt that federal courts have jurisdiction under [28 U.S.C.] § 1331" over an action seeking injunctive and declaratory relief against state officials on the grounds that a state regulation was preempted by federal law. *Verizon Maryland, Inc. v. Public Service Commission,* 535 U.S. 635, 642, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); see also, *Shaw,* 463 U.S. at 96 n. 14, 103 S.Ct. 2890 ("A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."); *Local Union No.12004, United Steelworkers Of America v. Massachusetts,* 377 F.3d 64, 74 (1st Cir.2004) ("A plaintiff may assert federal preemption as an affirmative cause of action to enjoin state officials from interfering with federal rights."). In these instances, "a plaintiff may invoke the jurisdiction of the federal courts by asserting a claim of preemption, even absent an explicit statutory cause of action." *Local Union No. 12004,* 377 F.3d at 75.

**B.** *DACO is expressly preempted from enforcing the deceptive advertising laws of Puerto Rico against American.*

■ Under the Supremacy Clause of Article VI of the Constitution, "[w]hen Congress has expressly so provided, federal preemption of state law is mandated." *Rosario–Cordero v. Crowley Towing & Transp. Co.,* 46 F.3d 120, 122 (1st Cir. 1995). The issue of preemption "requires an examination of congressional intent." *Schneidewind v. ANR Pipeline Co.,* 485 U.S.293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988). Hence, "Congress explicitly may define the extent to which its enactments pre-empt state law." *Id.* (citing *Shaw,* 463 U.S. at 95–96, 103 S.Ct. 2890). Express preemption exists "when a federal statute explicitly confirms Congress's intention to preempt state law and defines the extent of that preclusion." *Grant's Dairy–Maine v. Commissioner of Maine,* 232 F.3d 8, 15 (1st Cir.2000). Accordingly, "when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. General Electric Co.,* 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

■ Section 105(a)(1) of the ADA, currently codified at 49 U.S.C. § 41713(b)(1), provides as follows:

Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court had the opportunity to address the preemptive scope of Section105 of the

ADA in the context of certain "Travel Industry Enforcement Guidelines," which were promulgated by the National Association of Attorneys General ("NAAG") and purported to regulate *the content and format of airline fare advertising.* Several states attempted to enforce the guidelines through their consumer protection laws to stop allegedly deceptive advertising by airlines. The Supreme Court determined that the states' actions related to airline rates, routes, or services, and therefore held that the fare advertising provisions of the guidelines were completely preempted by the ADA. *Id.* at 391, 112 S.Ct. 2031.

In so holding, the *Morales* opinion explained that the "relating to" language in Section 105(a)(1) of the ADA, 49 U.S.C. § 41713(b)(1), was identical to the preemptive language found in the Employee Retirement Income Security Act ("ERISA"). Thus, the Supreme Court applied the same standard as in ERISA cases and concluded that "State enforcement actions having a connection with or reference to airline 'rates, routes, or services' are pre-empted under 49 U.S.C.App. § 1305(a)(1)." *Id.* at 384, 112 S.Ct. 2031.[3]

The opinion reasoned that the broad preemptive effect of Section 105 of the ADA applied *regardless of whether the state laws specifically address the airline industry* or have a general application. *Id.* at 386, 112 S.Ct. 2031; see also, *Smith v. Comair, Inc.,* 134 F.3d 254, 257 (4th Cir.1998). The Supreme Court also concluded that all state laws falling within the scope of the ADA's preemption provision were completely preempted *even if they were consistent with the federal statute. Id.*

Thereafter, in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), the Supreme Court determined that the above cited ADA clause also totally preempted claims under the Illinois general Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 Ill. Comp. State. § 505 (1992), concerning frequent flyer program modifications that devalued credits that members had already earned. 513 U.S. 219, 228, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995). Calling the Illinois law "paradigmatic of the consumer protection legislation underpinning the NAAG guidelines" at issue in *Morales,* the Supreme Court ruled that those guidelines "highlight the potential for intrusive regulation of airline business practices inherent in state consumer protection legislation typified by the Consumer Fraud Act." *Id.* at 227–28. Thus, *"[i]n light of … the ADA's purpose to leave largely to the airlines themselves, and not at all to the States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services,"* the Supreme Court held the deceptive advertising claims completely preempted. *Id.* at 228, 115 S.Ct. 817 (*emphasis ours* ). More generally, the High Court ruled "that the ADA's preemption prescription bars state-imposed regulation of air carriers …". *Id.* at 222, 115 S.Ct. 817. See also, *In re Jetblue Airways Corp. Privacy Litigation,* 379 F.Supp.2d 299, 313 (E.D.N.Y.2005) (summarizing this procedural history before the Supreme Court).

As the First Circuit Court of Appeals has clearly explained, in interpreting *Morales* and *Wolens* "the Supreme Court has

---

**3.** The instant suit though purporting to raise only state deceptive advertisement claims is necessarily federal in character by virtue of clearly manifest preemptive intent as found

under ERISA. *Metropolitan Life Insurance Co., v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)

focused on the effect that a state law has on carrier operations, not on the state's purpose for enacting the law." *New Hampshire Motor Transport Ass'n v. Rowe,* 448 F.3d 66, 77 (1st Cir.2006). The First Circuit reasoned that in both of the Supreme Court cases, "the Court's preemption analysis centered on the impact that the challenged state laws had on airline services and rates and not on the fact that the preempted laws were enacted pursuant to the states' police power to combat consumer fraud." *Id.* Hence, under *Morales* and its progeny, "the ADA preempts both laws that [1] explicitly refer to an airline's prices and those that [2] *have a significant effect upon prices.*" *Buck v. American Airlines, Inc.,* 476 F.3d 29, 34–35 (1st Cir.2007)(*emphasis ours*)(citing *United Parcel Serv., Inc. v. Flores–Galarza,* 318 F.3d 323, 335 (1st Cir.2003)).

DACO claims that American allegedly deceived the public by, for example, advertising the availability of a special fare during "fiestas" (which DACO interprets to mean Christmas holidays) but making the fare available in reality after January 10, 2007. See, Docket # 28 at 3. DACO argues that it is not attempting to regulate "rates, routes, or services," which it admits would be preempted by the ADA, but instead claims that the state entity is merely trying to regulate the wording used in American's ads. *Morales* and its progeny clearly demonstrate that this is a distinction without a difference.

The Supreme Court in *Morales* held that the ADA preempted proposed guidelines by the NAAG regarding advertisement with respect to disclosure of "limitations on refund or exchange rights, time-of-day or day-of-week restrictions, length-of-stay requirements, ... limitations on breaks or changes in itinerary, [and] *limits on fare availability.*" *Morales,* 504 U.S. at 387–88, 112 S.Ct. 2031 (*emphasis ours* ). The Supreme Court's rationale was that advertisement as a whole "relates to" rates, routes, or services, and state regulation in this regard is completely preempted, even if its intent is consistent with the ADA. *Id.* at 386, 112 S.Ct. 2031. It is undisputable that DACO's purported enforcement of its regulations against American, whether intended to regulate "wording" in ads or otherwise, has the effect of interfering with airline advertising intended to place limits on fare availability. This is precisely the type of state enforcement action the ADA was designed to preempt. See, *Id.* at 388, 112 S.Ct. 2031 ("One cannot avoid the conclusion that these aspects of the guidelines 'relate to' airline rates.").

DACO's strained and/or myopic reading of *Morales* in an effort to establish a distinction between one type of ad from another is rendered futile by the Supreme Court's ruling in *Wolens,* which upheld *Morales.* In *Wolens,* the Illinois Supreme Court attempted to distinguish *Morales* and held that enforcement of the Illinois Consumer Fraud Act regarding frequent flyer programs was not preempted because frequent flyer programs were not "essential" to airline services. The Supreme Court of the United States reversed the Illinois High Court in this critical respect, and held that the broad "relating to" language of the ADA did not make any distinction between "essential" and "unessential" airline operations. *Wolens,* 513 U.S. at 226, 115 S.Ct. 817. The Supreme Court held that

> [i]n light of the full text of the preemption clause, and of the ADA's purpose to leave largely to the airlines themselves, and not at all to States, *the selection and design of marketing mechanisms* appropriate to the furnishing of air transportation services, we conclude that § 1305(a)(1) [now 49 U.S.C.

§ 41713(b)(1)] preempts plaintiffs' claims under the Consumer Fraud Act. *Id.* at 228, 115 S.Ct. 817 (*emphasis ours*).

The holding in *Wolens* made clear that the ADA preempts any attempt by a State to regulate the selection and design of marketing mechanisms used by airlines. DACO's attempt to distinguish its regulatory activity from the *Morales* decision is against the holding in *Wolens.* In plain English, *Wolens* dictates that **all state regulatory activity** regarding airline advertising "relates to" airline rates, routes or services and is completely preempted by the ADA.

The Court's interpretation if *Morales* and *Wolens* as to the ADA accepting the filed in an alleged deceptive advertisement case is not novel. Subsequent federal judicial determinations have followed *Morales* and *Wolens* in cases factually similar to the instant case. For example, in *McLaughlin v. TWA Getaway Vacations, Inc.,* 979 F.Supp. 174 (S.D.N.Y.1997), plaintiff alleged that a vacation package, including both air transportation and hotel accommodations, was falsely advertised as a "3 days / 2 nights" vacation, whereas in actuality it scheduled plaintiff's arrival in Las Vegas on a Friday night and his departure the following Sunday. *Id.* at 175. The court held that "the restrictions that were placed (fraudulently or otherwise) **on the times of flights available** for low-cost vacation packages directly and materially impacted airfares, which are premised on filling off-peak flights in this manner." *Id.* at 176 (*emphasis ours*). Thus, "plaintiff's claims of false and deceptive advertising under the various New York consumer protection laws are preempted by the ADA and cannot support his action here." *Id.* Again, *McLaughlin* reaffirms that the type of advertising over which DACO claims jurisdiction (regarding fare availability) is completely preempted by the ADA. The similarity of the instant case with *McLaughlin* is strikingly impressive.

The Court cannot envision any theory that DACO can conjure to attempt to justify its insistence in regulating airline advertising in Puerto Rico. The fact that DACO could be interested in the substance or wording of the ads and not the dollar amount of the fares published does not make its preempted regulation less intrusive on the airlines' marketing practices. Making these distinctions leads to a complete lack of uniformity, which, as reasoned below, is precisely the result that preemption under the ADA and other preemptive legislation as ERISA seeks to avoid.

C.  *DACO's proposed enforcement of its regulations on American substantially burdens free airline competition and interstate commerce.*

■  It is axiomatic that the Commerce Clause (Article I, Section 8, Clause 3 of the United States Constitution) prohibits discrimination against interstate commerce. See, e.g., *Quill Corp. v. North Dakota,* 504 U.S. 298, 312, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992). However, even if a law is not discriminatory, it transgresses constitutional bounds if it imposes upon interstate commerce burdens that are "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). In assessing these burdens, courts must evaluate the practical effect of the statute, "not only by considering the consequences of the statute itself, but also by considering how the challenged statute may interact with the legitimate regulatory regimes of other States and what effect would arise if not one, but many or every, State adopted similar legislation." *Healy v. Beer Inst.,* 491 U.S. 324, 336, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989).

The purpose of the ADA is "to allow competition and the market place to determine rates *and practices* in the air transport industry." *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 427 (8th Cir.1985)(*emphasis ours*) (citing 49 U.S.C. § 1302(4) (1982)). In order to accomplish this purpose, after the ADA was enacted, the CAB Sunset Act of 1984, Pub.L. No. 98–443, 98 Stat. 1703 (1984), explicitly conferred exclusive and primary regulatory authority over interstate and international air fares deceptive advertising practices to the Department of Transportation("DOT"). In determining whether a particular practice is unfair or deceptive, the DOT provides careful consideration to the economic forces at work in the airline industry, and it attempts to avoid "placing any restrictions on the industry that are not necessary and that would tend to limit airline price competition." 54 Fed.Reg. at 31053. This course of action is consistent with the well-settled view that air fares advertising is essential to price competition. See, e.g., *Bates v. State Bar of Arizona*, 433 U.S. 350, 377, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 769, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).

The ADA "ensures that the prices at which these sales occur to consumers, *and the accompanying advertising,* can proceed under a legal standard uniform nationwide." *Illinois Corporate Travel, Inc. v. American Airlines, Inc.*, 889 F.2d 751, 755 (7th Cir.1989) (*emphasis ours*). "In reducing federal economic regulation of the field to allow the forces of free competition to rule the marketplace, Congress obviously did not intend to leave a vacuum to be filled by the Balkanizing forces of state and local regulation." *New England Legal Foundation v. Massachusetts Port Authority*, 883 F.2d 157, 173 (1st Cir.1989).

Allowing each state to regulate each airline's advertising practices would run counter to the uniformity intention behind the ADA and the Sunset Act, and would make "it virtually impossible to put together nation wide advertising programs that accurately portray the price of [the airlines'] services." 54 Fed.Reg. at 31054. As a result, "[p]rice competition would suffer, thus depriving consumers of lower fares." *Id.*

DACO's proposition, that preemption does not regulate the "wording" in airline advertisement published in Puerto Rico, is completely at odds with the design and purpose of the preemptive provision of the ADA. DACO seems to believe that, as long as it does not directly regulate the prices of air fares, it can use its regulatory powers to make determinations regarding the content of airline fare advertising. This rationale was expressly addressed and squarely rejected by the Supreme Court in *Morales.*

In *Morales,* the Supreme Court explained that

> it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares. Advertising "serves to inform the public of the ... prices of products and services, and thus performs an indispensable role in the allocation of resources." Restrictions on advertising "serve to increase the difficulty of discovering the lowest cost seller ... and [reduce] the incentive to price competitively." Accordingly, "where consumers have the benefit of price advertising, retail prices often are dramatically lower than they would be without advertising."

*Morales,* 504 U.S. at 388, 112 S.Ct. 2031 (*citations omitted*)(citing *Illinois Corporate Travel v. American Airlines, Inc.*, 889

F.2d 751, 754 (7th Cir.1989), cert. denied, 495 U.S. 919, 110 S.Ct. 1948, 109 L. Ed.2d 311 (1990)). The Supreme Court concluded that "compelling or restricting '[p]rice advertising' surely relates to 'price.'" *Id.*

The State Attorney Generals in *Morales*, similar to DACO in the instant case, insisted that they were not "compelling or restricting advertising, but [were] instead merely preventing the market distortion caused by 'false' advertising." *Id.* at 389, 112 S.Ct. 2031. The *Morales* ruling rejected this distinction and explained that the particular dynamics of the airline industry caused the state guidelines at issue in *Morales* "to curtail the airlines' ability to communicate fares to their customers." *Id.* The Supreme Court further explained the following economic reality about the airline industry:

> The expenses involved in operating an airline flight are almost entirely fixed costs; they increase very little with each additional passenger. The market for these flights is divided between consumers whose volume of purchases is relatively in sensitive to price (primarily business travelers) and consumers whose demand is very price sensitive indeed (primarily pleasure travelers). Accordingly, airlines try to sell as many seats per flight as possible at higher prices to the first group, and then to fill up the flight by selling seats at much lower prices to the second group (since almost all the costs are fixed, even a passenger paying far below average cost is preferable to an empty seat). In order for this marketing process to work, and for it ultimately to redound to the benefit of price-conscious travelers, the airlines must be able to place substantial restrictions on the availability of the lower priced seats (so as to sell as many seats as possible at the higher rate), and must be able to advertise the lower fares.

*Morales,* 504 U.S. at 389, 112 S.Ct. 2031. The Supreme Court then proceeded on to explain that allowing the states to place restrictions on fare advertising would place an undue burden on the airlines ability to advertise and sell the restricted, lower fares and could spell doom for the entire advertising scheme. Such a result would definitely have an adverse effect on price. *Id.* at 389–390, 112 S.Ct. 2031. Therefore, interference with airline fare advertisement by the states is completely preempted under the ADA. *Id.*

DACO's attempted regulatory interference with American's fare advertisement is indistinguishable from the NAAG guidelines at issue in *Morales.* To allow DACO to regulate airline advertising in Puerto Rico, under the guise that it is merely evaluating the "wording" and not the fares advertised therein, would eliminate the uniformity required by the deregulation scheme established in the ADA. If every state agency is allowed to express an opinion on the content of interstate airline advertising, it would be "virtually impossible to put together nationwide advertising programs that accurately portray the price of [airline] services." 54 Fed.Reg. at 31054. Given the direct relationship between advertising and price, allowing multiple state regulations will certainly have an effect on federally regulated price competition across the states and will place an undue burden on interstate commerce. Such a result violates the Commerce Clause and runs counter to the purpose behind the ADA.

*D. The DOT provides adequate avenues for Puerto Rican consumers to voice their complaints.*

DACO is concerned that, if it is not authorized to regulate airfare advertising as proposed, the result would be "to give

carte blanche to airlines, like American, to do whatever they want regarding the advertisement of ticket prices." Docket # 28 at 2. DACO claimed a chamber of horrors constituting a free avenue for all deceptive advertisement by airlines thereby prejudicing consumers. This concern was also specifically addressed by the Supreme Court. *Morales* expressly held that "our decision does not give the airlines carte blanche to lie to and deceive consumers; the DOT retains the power to prohibit advertisements which in its opinion do not further competitive pricing." *Morales*, 504 U.S. at 390–91, 112 S.Ct. 2031. Hence, the fact that DACO is completely preempted from regulating airline advertising in Puerto Rico does not mean that the airlines may wantonly deceive the public; should DACO understand consumers are being deceived, the agency may refer to the DOT requesting that any practice deemed deceptive be examined. Thus, the preemptive scheme devised by the ADA does not leave consumers without a remedy, nor does the federal law exempt airlines from any regulation, it merely centers all regulatory authority in the DOT in order to create uniform rules across the nation that will lead to free and healthy price competition.

DACO makes an unwarranted claim that because the relevant section of the Federal Aviation Act ("FAA"), 49 U.S.C. § 41712, speaks of "the initiative" of the Secretary of Transportation to investigate unfair and deceptive practices, Puerto Rican consumers are deprived of any mechanism to voice their complaints if the Secretary decides not to take such an initiative. Docket # 35 at 3. This section of the FAA simply has the effect of delegating investigative and adjudicative powers on the DOT. This provision is no different from the analog Puerto Rican statute delegating authority upon DACO's Secretary. See, 3 L.P.R.A. § 341f. DACO's argument constitutes an oversimplified argument failing to take into account the DOT's regulatory authority and its actual exercise of the same. The Court briefly explains.

When the ADA was passed, the authority of the Civil Aeronautics Board ("CAB"), was eliminated. Subsequent legislation, however, transferred the CAB's authority to protect consumers against deceptive advertising practices to the DOT. CAB Sunset Act of 1984, Pub.L. No. 98–443, 98 Stat. 11706 (1984). See also, H.R.Conf. Rep. No. 793, 98th Cong., 2d Sess. (1978), reprinted in 1984 U.S.C.C.A.N. 2857, 2860 (explaining rationale for change). Currently, any person may file a complaint with the DOT, and the DOT can prosecute actions against carriers for "unfair and deceptive practices." 49 U.S.C. § 41712. The DOT is also empowered with authority to issue regulations in protection of the public interest, 49 U.S.C.A. § 40101(a)(7), and can seek civil penalties of up to $1, 000 per violation,49 U.S.C. §§ 1155,46301. See also, *Wolens*, 513 U.S. at 228 n. 4, 115 S.Ct. 817 (noting that DOT assessed more than $1.8 million in civil penalties in aviation enforcement proceedings in 1993).

Pursuant to this exclusive authority, the DOT created an Office of Consumer Protection, a unit of the Office of Aviation Enforcement and Proceedings, responsible of compliance with the DOT's consumer protection requirements also in charge of detecting and correcting any practices by carriers that are inimical to the consumer interest. This office receives informal complaints from members of the public regarding aviation consumer issues, such as deceptive advertisement practices. The Consumer Protection Division of the DOT further possess information available to the public in the Spanish language, laying to rest DACO's concerns relating to potential language barriers in the federal regulatory scheme.

Further, DACO's own Organic Act provides that "[i]n case the complaint filed by the consumer does not state any actionable claim, the Department shall advise the consumer with respect to the solution of his complaint and/or shall refer same to any pertinent agency of the Commonwealth of Puerto Rico or of the United States." 3 L.P.R.A. § 341n. Hence, in a case alleging a misleading interstate or international airline advertisement claim, DACO itself has the responsibility of referring consumer complaints to the DOT, in order to ensure that Puerto Rican consumers are not left without remedy when DACO lacks jurisdiction to hear their claims. It is disingenuous for DACO to claim Puerto Rican consumers would somehow be at a loss before the DOT (because of language barriers, lack of information, etc.) when DACO has the duty to assist these consumers and point them in the right direction.[4]

## CONCLUSION

For the reasons stated above, the Court GRANTS American's Motion for Judgment on the Pleadings and DISMISSES plaintiff's Complaint, WITH PREJUDICE. Judgment shall be entered accordingly. The Court also GRANTS American's request for declaratory and injunctive relief and

1. DECLARES that, insofar as they apply to interstate and international air fare advertisements, the laws and regulations of Puerto Rico prohibiting and regulating deceptive advertising of airline fares are totally preempted by the Airline Deregulation Act as construed by the Supreme Court of the United States in *Mor-*

*ales v. Trans World Airlines,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), and *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), are null and void;

2. DECLARES that, insofar as they apply to interstate and international air fare advertisements, the laws and regulations of Puerto Rico prohibiting and regulating deceptive advertising violate the dormant Commerce Clause, and are null and void;

3. DECLARES that, insofar as they apply to interstate and international air fare advertisements, the laws and regulations of Puerto Rico prohibiting and regulating deceptive advertising violate 42 U.S.C. § 1983, and are null and void;

4. Enters a PERMANENT INJUNCTION enjoining the Secretary of DACO and all of his employees in that agency from taking any action now or in the future to enforce or implement any of the laws and regulations of Puerto Rico prohibiting and regulating deceptive advertising with respect to air fares advertising by airlines operating in interstate and international air commerce. Any potential "deceptive advertisement" of an interstate or international air carrier may be referred by DACO to the DOT, Consumer Protection Division.

**IT IS SO ORDERED.**

### *JUDGMENT*

For the reasons stated in the Opinion and Order of this same date, the instant case is hereby **DISMISSED WITH PREJUDICE.**

*Cuesnongle v. Ramos,* 835 F.2d 1486 (1st Cir.1987)(Barring a federal court to enter a remedy based on State law against a state actor under the Eleventh Amendment of the United States Constitution).

---

**4.** The Court does not enjoin DACO pursuant to Puerto Rico law, instead it is only strictly applying federal law, *see e.g., Pennhurst State Sch. & Hospital v. Halderman,* 465 U.S. 89, 104, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) and

This case is now closed for all administrative and statistical purposes.

**IT IS SO ORDERED, ADJUDGED AND DECREED.**